# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **RONALD W. JONES, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:14-CV-273** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Ronald W. Jones, II ("Jones") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Jones alleges that the Administrative Law Judge ("ALJ") improperly evaluated his mental impairments and improperly analyzed his credibility. I conclude that substantial evidence supports the ALJ's decision as a whole. Accordingly, I **RECOMMEND DENYING** Jones's Motion for Summary Judgment (Dkt. No. 15), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Jones failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is

---

[1] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

1

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Jones has received SSI benefits since the age of two due to attention deficit hyperactivity disorder (ADHD). R. 83–85. When Jones reached the age of 18, the Commissioner was required to reassess his eligibility for SSI as an adult. R. 117–20. In March 2011, the Commissioner found Jones not disabled at the initial and reconsideration levels of administrative review. R. 117–32. On July 29, 2013, ALJ Robert S. Habermann held a hearing to consider Jones's disability claim. R. 772–93. Jones was represented by an attorney at the hearing, which included testimony from vocational expert Ashley Wells. Id.

On September 16, 2013, the ALJ entered his decision analyzing Jones's claim under the familiar five-step process[2] and denying Jones's claim for benefits. R. 13–22. The ALJ found that since March 1, 2011, Jones suffered from the severe impairments of fainting/blackout

---

42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F. 3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

episodes, anxiety disorder, posttraumatic stress disorder, and ADHD. R. 15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15–16. The ALJ further found that Jones retained the RFC to perform light work,[3] except that he can lift and/or carry 50 pounds occasionally and 20 pounds frequently; sit, stand and walk for 6 hours in an 8 hour workday; occasionally balance; frequently stoop, kneel, crouch, and crawl; and never climb. R. 16. The ALJ further found that Jones should avoid driving and hazards and will likely be absent from work one day per month. The ALJ concluded that Jones is able to fulfill "the basic mental demands of competitive, remunerative, unskilled work including the abilities (on a sustained basis) to understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers and usual work situations, and to deal with changes in a routine work setting." R. 16. The ALJ also determined that Jones should avoid contact with the general public. R. 16.

The ALJ determined that Jones had no past relevant work, but that jobs exist in significant numbers in the national economy that he could perform, such as night cleaner, mail routing clerk, and assembler. R. 22. Thus, the ALJ concluded that Jones was not disabled. On March 31, 2014, the Appeals Council denied Jones's request for review (R. 5–7), and this appeal followed.

## ANALYSIS

Jones alleges that he is disabled under the Act due to both physical limitations related to the heart condition supraventricular tachycardia,[4] and mental limitations arising from anxiety,

---

[3]An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite his limitations. 20 C.F.R. § 416.920. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

depression, post-traumatic stress disorder and ADHD. R. 780–84. Jones argues that the ALJ failed to properly assess his mental limitations and properly analyze his credibility.

## A. __Mental Limitations__

Jones argues that the RFC determined by the ALJ did not properly account for his limitations with concentration, persistence or pace. Jones also argues that the ALJ erred by failing to adopt the conclusion of consultative physician Marvin A. Gardner, Jr., Ph.D., that Jones should have minimal contact with supervisors and co-workers. R. 683.

Despite receiving disability benefits since the age of two for ADHD, Jones sought minimal mental health treatment after March 2011. Jones was born in 1991 and graduated from high school where he attended special education courses for math, English and science. R. 782. Jones was twenty-one years old at the time of the administrative hearing in this matter. R. 773.

On February 24, 2011, Jones was examined by consultative physician Roger DeLapp, Ph.D. R. 273–76. Dr. DeLapp noted that Jones claimed to be disabled because "he gets spells, he gets dizzy, he has sleep problems and he says his eating habits are unusual." R. 274. Jones did not describe symptoms of anxiety or depression. R. 275. Dr. DeLapp noted that Jones's processing speed scores on the intelligence test were an "outstanding" strength for him, which would suggest that "even off Concerta his capacity for this kind of attention and concentration was better than his overall tested IQ." R. 274. Dr. DeLapp diagnosed Jones with ADHD,

---

[4] Supraventricular tachycardia is a series of rapid heartbeats that begin in or involve the upper chambers (atria) of the heart. Supraventricular tachycardia can cause the heart to beat very rapidly or erratically. As a result, the heart may beat inefficiently, and the body may receive an inadequate blood supply. See http://www.hopkinsmedicine.org/heart_vascular_institute/conditions_treatments/conditions/supraventricular_tachycardia.html.

4

possibly in remission or outgrown, borderline IQ, and job related situational anxiety. He assessed Jones's GAF score at 60.[5]

Dr. DeLapp concluded that Jones is capable of simple and repetitive tasks, and his processing speed "may be of real help to him with this." R. 276. Dr. DeLapp found that Jones could be in regular attendance at work on a consistent basis, but would probably require some special supervision due to his borderline IQ. Id. "His mild situational anxiety has recently caused some interruption in his ability to do telephone sales work, though this might well improve with some modest mental health treatment, or simply more on the job experience." R. 276. Dr. DeLapp found that Jones had no problems getting along with supervisors, coworkers or the public. Id.

On March 3, 2011, two state agency psychological consultants, Joseph Leizer, Ph.D., and Julie Jennings, Ph.D., reviewed Jones's medical records and completed a mental residual functional capacity assessment. R. 291–93. Drs. Leizer and Jennings concluded that Jones was moderately limited in his ability to understand, remember and carry out detailed instruction; ability to maintain attention and concentration for extended periods; ability to work in coordination with others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticisms; and ability to adapt appropriately to changes and set realistic goals or make plans independently of others. Id.

---

[5] The GAF Scale is used by mental health professionals to rate overall functioning and considers the psychological, social, and occupational functioning of an individual on a hypothetical continuum of 1 to 100. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Rev. 2000) (DSM IV), with 100 being the most high-functioning. A score of 51-60 suggests moderate symptoms or difficulty in social or occupational, or school functioning. DSM IV.

On June 22, 2012, Jones visited Comprehensive Counseling Services for an initial clinical evaluation by Maurice Fisher, Sr. Ph.D. R. 651. Dr. Fisher noted that Jones was well-groomed and cooperative, with a depressed and anxious affect, normal speech and intact thought process. His orientation and memory were normal. The remainder of the evaluation consists of Dr. Fisher's unintelligible handwritten notes. R. 651–53. Dr. Fisher also completed a medical source statement of ability to do work-related activities and indicated that Jones had no work limitations arising from his mental impairments. R. 654–55.

On April 13, 2013, Marvin A. Gardner, Jr., Ph.D. performed a consultative examination of Jones. R. 679–84. During the examination Jones reported that he was working "boxing perfume and having problems keeping up because I was out of breath. I was let go because I was too slow. Nothing else got in my way of working." R. 680. Jones reported that he was not prescribed or taking any mental health medications. Id. Jones also noted that during his last job his relationship with co-workers was "okay." R. 681. Dr. Gardner performed a cognitive functioning exam, and concluded that Jones is able to perform simple and repetitive tasks and maintain regular attendance in the workplace. R. 682–83. Dr. Gardner found a moderate work-related impairment of concentration, persistence or pace when attempting simple and repetitive tasks. He found no reason that Jones would require special or additional supervision because his intellect measured in the borderline range. Dr. Gardner also noted that Jones has a social anxiety disorder for which he was not receiving either medical or psychotherapeutic treatment. Dr. Gardner recommended work training by the Department of Rehabilitative Services. Dr. Gardner found that Jones is likely to have brief panic attacks several times each week in a competitive work setting; however those attacks should gradually diminish as he becomes adjusted to simple and repetitive work procedures. Dr. Gardner recommended that Jones have minimal contact with

supervisors and coworkers, but "with some experience, should be able to adjust to moderate contact with both supervisors and coworkers with appropriate mental health treatment for his anxiety disorders." R. 683. Dr. Gardner assessed Jones's GAF at 59.

Dr. Gardner completed a medical source statement and noted that Jones had moderate limitations with carrying out, understanding simple instructions and marked impairment related to complex instructions. R. 685. He also noted marked impairment interacting appropriately with the public and moderate impairments interacting appropriately with supervisors and co-workers. R. 686.

On April 17, 2013, Jones was treated by Wayne Brackenrich, M.D., complaining of having difficulty controlling his anger, difficulty sleeping, and chest pain. R. 711. Jones reported that he has trouble expressing his anger, and likes to hit something when angry. Id. Dr. Brackenrich diagnosed chest pain, social anxiety disorder, and agitated depression. R. 712. He recommended that Jones see a counselor or psychologist and start Celexa. Id.

Based upon the records and opinions summarized above, the ALJ determined that Jones was capable of competitive, remunerative, unskilled work including the ability to understand, carryout, and remember simple instructions; to respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting. R. 16. The ALJ also found that Jones should avoid contact with the general public.

### a. Discussion of Mental Impairments

Jones first argues that "simply limiting [Jones] to remunerative unskilled work without further narrative discussion of [Jones's] mental RFC, falls short of the requirements found in SSR 96-8p." Dkt. No. 16, p. 20.[6] Jones correctly states that Social Security Ruling ("SSR") 96-

---

[6] To the extent that Jones argues that the ALJ should have conducted a "function-by-function" analysis for his mental impairments, the Fourth Circuit recently grappled with function-by-function analyses in <u>Mascio v.</u>

7

8p requires the ALJ to include a narrative discussion describing how the evidence supports his

conclusions when developing the RFC. SSR 96-8p, 1996 WL 374184; Teague v. Astrue, No. CA

1:10-2767-MBS-SVH, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011).  The ALJ "must include

a narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

observations)." SSR 96–8p at *7; Meadows v. Astrue, No. 5:11CV00063, 2012 WL 3542536, at

*8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. JKS 09-2545, 2010 WL 5237850, at

*5 (D. Md. Dec. 16, 2010)).

Here, the ALJ's discussion of Jones's mental limitations satisfies the requirements of

SSR 96-8p.  The ALJ considered both medical and non-medical evidence in assessing Jones's

RFC and provided the narrative discussion required by the regulations.  The ALJ noted the

history of Jones's mental symptoms, and reviewed his mental health treatment in detail. R. 18–

21.  The ALJ reviewed and considered each of the four physician's opinions relating to Jones's

mental impairments, and assigned great weight to the opinions of the state agency psychologists

and consultative examiner. R. 18–21. The ALJ also considered Jones's testimony as to his daily

activities and social interaction and his reports of the same to the consultative physicians. R. 18–

21.  Given the ALJ's consideration of medical opinions, the claimant's testimony, and evidence

of mental impairment, which he documented through a narrative discussion, the court is capable

---

Colvin, 780 F.3d 632 (4th Cir. 2015).   Although the Mascio Court declined accepting a per se rule requiring remand
where the ALJ does not perform an explicit function-by-function analysis, the court did find that "[r]emand may be
appropriate... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory
evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  Id. at 636
(citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).  In Mascio, the court remanded the claim because the
ALJ did not address whether the claimant could perform certain functions throughout the full workday or address
conflicting evidence in the record which prevented meaningful review.  Id.  "The Mascio Court held remand was
necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity
assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities."
Newcomb v. Colvin, No. 2:14-CV-76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).  Here, the ALJ's
decision contains sufficient information to allow meaningful review.
        .

of meaningfully reviewing the RFC; thus, the ALJ met the requirements of SSR 96-8p. See

Taylor v. Astrue, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012).

### b. Concentration, Persistence and Pace

Jones also argues that the RFC restrictions of "competitive, remunerative, unskilled work

including the abilities (on a sustained basis) to understand, carry out, and remember simple

instructions" do not properly account for his moderate impairment with concentration,

persistence and pace. As a result of this alleged inadequacy, Jones contends that the ALJ did not

pose a hypothetical question that included the moderate limitations of maintaining concentration,

persistence, and pace to the vocational expert.

In Mascio v. Colvin the Fourth Circuit held that an ALJ does not generally account for a

claimant's limitations in concentration, persistence, and pace by restricting the claimant to

simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks

differs from the ability to stay on task.  Only the latter limitation would account for a claimant's

limitation in concentration, persistence, or pace." Id. at 638; see also Sexton v. Colvin, 21 F.

Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 F.App'x 833, 839

(10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily"

accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the

pace required to complete a task).  In Mascio, the Fourth Circuit found that the ALJ did not

explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate

into a limitation in his RFC.  The court noted, however, that the ALJ may find that the

concentration, persistence or pace limitation would not affect Mascio's ability to work, in which

case it would have been appropriate to exclude it from the hypothetical tendered to the

vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, Civ. Action No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See Gardner v. Colvin, No. CIV. TMD 14-100, 2015 WL 1508835, at *8 (D. Md. Mar. 31, 2015). Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step 4 analysis, and noted that his treating physicians found that he exhibited good attention, intact memory, logical thought flow, and good

10

immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work.

The Winschel court relied upon several other circuits which have held that an ALJ may exclude a moderate limitation in concentration persistence and pace from either the RFC or the hypothetical presented to the vocational expert where the evidence reflects that the claimant can perform simple, unskilled work. See Simila v. Astrue, 573 F.3d 503, 521–22 (7th Cir. 2009); Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–76 (9th Cir. 2008); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001); see also Wiederholt v. Barnhart, 121 Fed. Appx. 833 (10th Cir. 2005). Additionally, other circuits have held that an ALJ may adequately address a claimant's limitations in concentration, persistence, and pace through hypothetical questions presented to the vocational expert which include evidence or opinions that account for these limitations. See e.g., Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (holding that the ALJ's hypothetical adequately incorporated concentration, persistence or pace limitations where he directed the vocational expert to consider a specific portion of the record that included those deficiencies); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ did not err by failing to include deficiencies in concentration, persistence, or pace where the hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress).

For example, in Stubbs-Danielson v. Astrue, the court affirmed the RFC which limited the claimant to "simple, routine, repetitive sedentary work, requiring no interaction with the public" despite having moderate limitations in concentration, persistence, or pace where the state

agency reviewing psychologist found that despite the claimant's slow pace and moderate limitations in other mental areas, she retained the ability to carry out simple tasks. 539 F.3d at 1173–76.  Likewise, in Howard v. Massanari, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace, where the state agency psychologist concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. 255 F.3d at 582.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and included in the hypothetical question presented to the vocational expert.  An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Here, ample evidence supports the ALJ's conclusion that Jones is capable of performing simple, unskilled work despite his moderate limitation in concentration, persistence and pace. Drs. DeLapp, Leizer, Jennings and Gardner all concluded that Jones was capable of performing simple, unskilled jobs, despite his moderate impairment with concentration, persistence, and pace. R. 276, 291–93, 683. Specifically, Dr. DeLapp found that Jones's persistence and pace were an "outstanding" strength, and would "be of help to him in entry level jobs." R. 274–76. Dr. DeLapp further noted that Jones's capacity for attention and concentration was better than his overall tested IQ. R. 274.

12

Likewise, Dr. Gardner completed a detailed six page report analyzing Jones's mental limitations, and stated that Jones should have no more than a moderate work-related impairment of concentration, persistence or pace when attempting simple and repetitive tasks, but would have a marked impairment of concentration, persistence, and pace when attempting complex work tasks. R. 683. Dr. Gardner based this conclusion on Jones's ability to complete serial 2s up to 20 in eight seconds with no errors, but inability to complete serial 7s. Id. Dr. Gardner found that Jones was capable of dealing with the usual stresses encountered in competitive work and would need no special or additional supervision. Id. Dr. Gardner concluded that Jones is able to perform simple and repetitive tasks and maintain regular attendance in the workplace. Id.

Further, the hypothetical question given to the vocational expert included the limitations which the ALJ found affected Jones's ability to work. The ALJ gave Dr. Gardner's opinion great weight, and included it in the hypothetical question presented to the vocational expert. R. 788. The vocational expert considered Dr. Gardner's opinion in full, which included a moderate impairment in concentration, persistence, and pace, and testified that Jones could perform jobs in the national economy such as night cleaner, mail routing clerk and assembler. R. 789. The vocational expert did not indicate that he rejected, or in any way failed to consider, any portion of Dr. Gardner's report. Additionally, counsel for Jones was present at the hearing and did not indicate any concern that the vocational expert was being presented with an inaccurate summary of Jones's functional limitations.

Thus, given the detailed explanations provided by Drs. DeLapp and Gardner as to Jones's ability to complete simple, unskilled work despite his moderate limitation in concentration, persistence and pace, substantial evidence exists to support the ALJ's RFC and the hypothetical question presented to the vocational expert. There is no evidence in the record

13

that suggests that Jones's moderate impairment with concentration, persistence or pace would prevent him from completing a normal workday or workweek without interruption or completing work activities on a consistent basis. Drs. Leizer, Jennings and Gardner all agreed that though Jones's concentration, persistence and pace was moderately impaired, he remained capable of performing simple unskilled competitive work. R. 291–93, 683. See Claiborne v. Comm'r, No. SAG-14-1918, 2015 WL 2062184, at *3 (D. Md. May 1, 2015) (citing Dean v. Comm'r, No. SAG-14-1127, 2015 WL 1431548, at *1–2 (D. Md. Mar. 26, 2015) (ALJ appropriately limited claimant to simple, repetitive, routine tasks where claimant remained persistent throughout the mental functioning testing process and was able to sustain attention).

Thus, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation of simple, unskilled work accounts for Jones's moderate impairment in concentration, persistence and pace with no further analysis or consideration. Rather, the medical evidence overwhelmingly supports the conclusion that despite his moderate limitation in concentration, persistence or pace, Jones is capable of performing the basic mental demands of simple, unskilled work.

Considering the record as a whole and specifically referring to the consultative and examining physicians' opinions in the record and their determination of Jones's ability to work, the ALJ determined that while such limitations existed, they did not preclude Jones from performing competitive, remunerative, unskilled work with simple instructions. Consequently, I find that Jones's assertion that the ALJ erred by failing to properly account for his limitations in concentration, persistence and pace is without merit.

### c. **Social Interaction**

Jones also argues that the ALJ erred by failing to adopt Dr. Gardner's determination that Jones should have minimal contact with supervisors and co-workers. R. 683. Specifically, Dr. Gardner's opinion states that Jones "should have minimal contact with supervisors and coworkers but with some experience, should be able to adjust to moderate contact with both supervisors and coworkers with appropriate mental health treatment for his anxiety disorders." R. 683. The ALJ gave "great" weight to Dr. Gardner's opinion and included the opinion in the hypothetical question presented to the vocational expert. The vocational expert found that given the limitations set forth in Dr. Gardner's opinion Jones could work as a night cleaner, mail routing clerk and assembler. In the ALJ's RFC, he does not include any restrictions related to contact with supervisors and co-workers.

When making an RFC assessment, the ALJ must assess the medical opinions of record. 20 C.F.R. § 416.927. The regulations provide that the opinion of a consultative examiner like Dr. Gardner should be given more weight than a medical source that has not examined the claimant. 20 C.F.R. § 416.927(c). However, the ALJ must weigh several factors when evaluating a consultative opinion, such as whether relevant medical evidence supports the opinion, how well explained the opinion is, how consistent the opinion is with the record as a whole, and whether the opinion is from a specialist in the relevant field. 20 C.F.R. § 416.927. Ultimately, the ALJ must consider the opinions received in light of the evidence of record and determine whether the record supports the opinions offered. While an examiner's opinion is generally accorded more weight than a non-examiner's opinion, if an "opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."

Case 7:14-cv-00273-GEC-RSB   Document 22   Filed 07/02/15   Page 15 of 21   Pageid#: 909

<u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) (citing <u>Craig v. Chater</u>, 76 F.3d 385, 590) (4th Cir. 1996)).

Thus, although the ALJ gave Dr. Gardner's opinion great weight, he was not required to adopt every limitation contained therein. Rather, the ALJ was tasked with weighing Dr. Gardner's opinion against the record as a whole. Having reviewed the record, I find that substantial evidence supports the ALJ's decision not to restrict Jones's contact with supervisors or coworkers.

Specifically, in February 2011, Dr. DeLapp found that Jones would have "no problems getting along with supervisors, co-workers or the public." R. 276. During Dr. DeLapp's assessment, Jones reported caring for his younger brothers and getting along well with his friends. R. 274–75. Likewise, in April 2013, Jones reported that he got along "good" with his teachers and his relationships with coworkers were "okay." R. 681. He noted that he was let go from his last job for being too slow, and that "nothing else got in my way of working." R. 680. Additionally, throughout the administrative proceedings Jones testified that he lives with two little brothers, has a friend he sees daily, shops for groceries, cooks, goes to the movies, and takes walks. R. 20. Notably, Dr. Gardner is the only opinion that restricts Jones's interaction with supervisors and co-workers, and includes a qualifier that the limitation will likely go away as Jones adjusts to the workplace. R. 683.

Considering the evidence of record, substantial evidence supports the ALJ's conclusion that Jones is not restricted in his interaction with supervisors and co-workers. Further, out of an abundance of caution, the ALJ included a moderate restriction on interaction with supervisors and co-workers in his hypothetical question to the vocational expert and the vocational expert

16

found that jobs existed that Jones can perform. Thus, I find substantial evidence to support the ALJ's conclusion that Jones is not disabled.

### B. Credibility Determination

Jones also argues that the ALJ failed to properly consider his credibility.[7] Jones argues that the activities cited by the ALJ in support of his RFC finding are "not inconsistent" with Jones's allegations of disability stemming from his mental impairments. Jones also argues that there is "interplay" between his physical and mental impairments, and that the daily activities he performs are minimal. Dkt. No. 16, p. 25–26. Jones's arguments consist of nothing more than facial disagreements with the ALJ's conclusions.

After a thorough review of Jones's medical and mental health treatment and allegations of disability, the ALJ stated:

> [t]he claimant's allegations are not entirely credible. The medical evidence of record reflects that his passing out spells have not been so severe as to require frequent emergency treatment. His psychiatric symptoms cause moderate to marked limitations, but such have been addressed in the reduced residual functional capacity issued. He is not currently on any medications. Additionally, he had multiple virtually unremarkable physical and psychiatric examinations. In fact, he continues to perform multiple robust activities of daily living. Overall the claimant's subjective symptoms do not correlate with the objective findings in the medical evidence of record.

R. 21.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Jones's subjective allegations of disabling impairments are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Jones met his burden of proving that he suffers from an underlying impairment which is

---

[7] Counsel for Jones did not raise the remaining issues during oral argument with this court; however, because these arguments are included in Jones's brief in support of motion for summary judgment I will discuss them.

reasonably expected to produce his claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Jones's ability to work. Id. at 594–95.

In this case, the ALJ recognized that Jones suffers from severe impairments that cause him to experience limitations. As the ALJ noted in his opinion, the issue is not whether Jones has limitations, but whether those limitations are so severe as to be disabling. The ALJ found that Jones's statements regarding disabling limitations are not entirely credible and are not supported by his medical records, the fact that he is not taking any medications, his unremarkable physical examinations, and his reported activities of daily living. R. 21. The ALJ included a detailed analysis of Jones's treatment records in his opinion in support of this conclusion. R. 16–21.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). "The ALJ… is not required to accept a claimant's testimony about her symptoms at face value; rather he is to weigh such testimony along with all of the evidence, including not only the objective medical evidence, but statements and other information provided by physicians or psychologists and other persons about her symptoms and how they affect her and any other relevant evidence in the case record." Meadows v. Astrue, No. 5:11CV00063, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (citing SSR 86-7p). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. Bishop

18

v. Comm'r of Soc. Sec., 583 F. Appx. 65, 68 (citing Edelco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir.1997)).

After a review of the record as a whole, I find that substantial evidence provided by the consultative examiners' opinions, the medical records and Jones's testimony supports the ALJ's determination that Jones's testimony regarding his impairments is only partially credible, and that Jones is capable of performing the range of light work set forth in the ALJ's opinion. Notably, Jones does not dispute the evidence cited by the ALJ in support of his credibility finding. Instead, Jones contends that his activities of daily living are "not inconsistent" with his allegations of disability. Assuming this is so, it is no basis for remand. The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard–defined as more than a mere scintilla but perhaps somewhat less than a preponderance–is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

## C. <u>Absenteeism</u>

Jones also asserts that the ALJ improperly failed to account for his need to abandon work at unpredictable times. The ALJ included a limitation for Jones to miss work once per month. Jones contends that the ALJ should have found that Jones's absenteeism would be unpredictable and higher than once a month. The basis for Jones's contention is "the combination of his physical and mental impairments" set forth in the "medical evidence of record." Dkt. No. 16, p. 26. Jones does not direct the court to any evidence in the record that supports a higher rate of absenteeism than one day per month. Indeed, the court is not aware of any medical opinions or

19

treatment notes that find that Jones would have an unpredictable rate of absenteeism. In July 2012, Jones's primary care provider cleared him to work a full time schedule of four days a week, ten hours a day. R. 473, 482. Thus, Jones is simply asking the Court to re-weigh the evidence, which I am not permitted to do under the regulations.

## **<u>CONCLUSION</u>**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Jones's claim for benefits and in determining that his impairments would not significantly limit his physical or mental ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Jones's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections

pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  July 1, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge